Filed 9/11/14  Carle v. Gardos CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LISA CARLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>PETER GARDOS,<br><br>　　　　Defendant and Appellant. | A138979<br><br>(San Francisco County<br>Super. Ct. No. FDV12809921) |

**INTRODUCTION**

Defendant Peter Gardos appeals after the trial court issued a three-year restraining order under the Domestic Violence Prevention Act (DVPA).  (Fam. Code, § 6200 et seq.)[1]  The restraining order contained personal conduct and stay-away orders protecting plaintiff Lisa Carle.  Defendant contends the court abused its discretion in issuing the restraining order because it improperly excluded relevant evidence that would have impeached plaintiff's credibility.  We will affirm the order.

**BACKGROUND AND PROCEDURAL HISTORY[2]**

The parties were in a dating relationship for several years.  They met around 2007[3] and moved in together in 2008.  Defendant broke up with plaintiff in 2010 but they continued to see each other until they separated for good in July 2011.  A few days after

---

[1] All further statutory references are to the Family Code unless otherwise indicated.

[2] Our factual summary is based on the evidence introduced at the restraining order hearing.

[3] According to defendant, the couple actually met in 2008 at a "training workshop in a specialized form of somatic sex coaching."

1

their breakup, he informed plaintiff that he had incriminating photos of her on his computer documenting that she had assaulted him several times. He claimed he had a "packet of evidence" against her and would take it to the police unless she obtained psychological help.

Defendant's conduct reportedly escalated in 2012. He allegedly coerced plaintiff into having sex with him on several occasions, stating that if she refused he would "turn [her] in." He also convinced her that she had a brain disorder and that she was the victim of cybercrime perpetrated by Ukrainian gang members. In June 2012, he threatened her with a lit cigarette and a knife, accusing her of conspiring with the Ukrainian hackers to access his computer in order to take his money and destroy his business. In August 2012, he sent plaintiff several long e-mail messages.

On August 27, 2012, plaintiff wrote a letter to defendant asking him stop contacting her. She gave the letter to his doorman and asked him to give it to defendant.

On October 6, 2012, plaintiff had an attorney send defendant a cease and desist letter. In spite of her requests for no contact, defendant persisted in sending her e-mail messages and text messages. He also called her telephone and left several voicemail messages. He repeatedly threatened to turn incriminating information about her over to the authorities, and at one point claimed she had tried to poison him. This pattern of behavior continued into December 2012.

On December 24, 2012, plaintiff filed for a domestic violence restraining order against defendant. Her request included a lengthy declaration and extensive documentary evidence of his allegedly harassing phone calls, text messages, and e-mail messages. That same day, the trial court issued a temporary restraining order.

On February 25, 2013, defendant filed a response to plaintiff's request accompanied by his own declaration, which included copies of e-mail messages, text messages, and documents purportedly pertaining to plaintiff's medical and psychiatric

2

care.  He asserted he posed no threat to her and claimed she had filed this action in order to abuse and harass him.

On March 25, 2013, plaintiff filed motions in limine to which defendant filed objections on April 3, 2013.  Plaintiff sought to exclude electronic recordings, evidence regarding her alleged participation in criminal activity not involving defendant, evidence of her physical and mental health conditions, evidence of her previous relationships, evidence of her past sexual conduct, and various hearsay statements.

The trial court held an evidentiary hearing on April 4, 2013.  At the conclusion of the hearing, the court entered a three-year restraining order that, among other things, prohibits defendant from contacting plaintiff "by any means, including, but not limited to, by telephone, mail, e-mail or other electronic means."  Neither party requested a statement of decision before the matter was submitted.  This appeal followed.

## DISCUSSION

### I.  Statutory Background

Under the DVPA, a trial court may issue an order "to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved" upon "reasonable proof of a past act or acts of abuse."  (§ 6300.)

The DVPA defines "abuse" as meaning "any of the following: [¶] (a) Intentionally or recklessly to cause or attempt to cause bodily injury. [¶] (b) Sexual assault. [¶] (c) To place a person in reasonable apprehension of imminent serious bodily injury to that person or to another. [¶] (d) To engage in any behavior that has been or could be enjoined pursuant to Section 6320."  (§ 6203.)  Behavior that may be enjoined pursuant to section 6320 includes, "molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, . . . harassing, telephoning, . . . destroying personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party."  (§ 6320; see also *In re Marriage of Nadkarni*

3

(2009) 173 Cal.App.4th 1483, 1498 (*Nadkarni*) ["the plain meaning of the phrase 'disturbing the peace' in section 6320 may include, as abuse within the meaning of the DVPA, a former husband's alleged conduct in destroying the mental or emotional calm of his former wife by accessing, reading and publicly disclosing her confidential e-mails"]; *Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1299 [a trial court may impose a domestic violence restraining order based solely on nonviolent conduct, including the "restrained party placing annoying telephone calls or sending unwanted e-mails, letters, or the like"].)

On appeal, we review the trial court's issuance of a DVPA restraining order for abuse of discretion. (*S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1264; *Nadkarni, supra,* 173 Cal.App.4th 1483 at p. 1495.)

## II. Exclusion of Defendant's Evidence

Defendant's sole contention on appeal is that the trial court's erroneous evidentiary rulings were prejudicial because they prevented him from challenging plaintiff's credibility.

First, he complains that he was prevented from asking plaintiff to identify all of the medications she was on. At the hearing, his counsel argued against plaintiff's relevance objection by asserting her medications, "if any of them are psychosomatic drugs or relating to memory loss or having the side effects of behavioral related incidences, . . . could impact the statements she has made today." As an offer of proof, the attorney stated, "[t]he offer of proof that she is on the drugs is her own statement that she made in her declaration." The trial court sustained the objection.

Next, defendant asserts the trial court improperly granted plaintiff's motion in limine to exclude evidence of her physical and mental health conditions. He complains he was not allowed to introduce e-mails plaintiff had written describing her hallucinations and her inability to remember things. He also complains that he was unable to question her about a narration of a brain scan (MRI) purportedly revealing her brain abnormalities.

4

He asserts this evidence would have made her allegation that he had "tried to convince [her] that [she] had a brain tumor" seem "a little bit less outrageous." He also contests the court's refusal to admit a doctor's note referring plaintiff to a neuropsychiatrist.

Finally, defendant complains he was unfairly prevented from asking plaintiff about false accusations that she had made against her prior romantic partners. Nor was he allowed to ask about her past sexual conduct, including whether she was a prostitute.

### III. Analysis

Evidence Code section 351 reads: "Except as otherwise provided by statute, all relevant evidence is admissible." Evidence is relevant if it has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) We review any ruling by the trial court as to the admissibility of evidence for abuse of discretion. (*People ex rel. Lockyer v. Sun Pacific Farming Co.* (2000) 77 Cal.App.4th 619, 639, citing *People v. Alvarez* (1996) 14 Cal.4th 155, 201.) We do not substitute our judgment for that of the trial court and may grant relief only when the asserted abuse of discretion constitutes a miscarriage of justice. (*Ajaxo Inc. v. E\*Trade Group Inc.* (2005) 135 Cal.App.4th 21, 44.)

In arguing that the trial court's rulings resulted in prejudice, defendant claims all of the contacts he initiated following his receipt of plaintiff's written requests for no further communication were made for legitimate reasons. He asserts if the evidence he offered had been admitted, there is a reasonable probability plaintiff would not have sustained her burden of proving that his communications were made with the intent to annoy, rather than in good faith. His argument is based on the assertion that her proof turned entirely on her credibility.

To the contrary, defendant's pattern of repeated e-mailing, texting, and calling even after plaintiff had repeatedly requested no further contact was established by an extensive and essentially unchallenged written record. For example, she introduced photocopies of his e-mail and text messages to establish their contents and the times that

they were sent.  Defendant did not deny sending these messages.  He also admitted to calling her and leaving numerous voicemail messages in spite of the fact that she had explicitly asked him to stop doing so.  In these messages, he repeatedly accused her of serious criminal conduct, threatening to jeopardize her professional license and report her to the police if she did not cooperate with him.

Even if defendant's attack on plaintiff's credibility had succeeded, the documentary evidence shows a pattern of conduct sufficient to constitute "abuse" within the meaning of the DVPA.  (See, e.g., *Ritchie v. Konrad, supra,* 115 Cal.App.4th 1275 at p. 1299.)  Thus, even were we to conclude the trial court erred in excluding defendant's evidence, the error was not prejudicial because it is not reasonably probable that a result more favorable to him would have been reached absent the error.  (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

In short, defendant admitted to a number of acts meeting the definition of "abuse" within the meaning of the DVPA.  It follows that he has failed to demonstrate prejudicial error in the trial court's order restraining such conduct.

## DISPOSITION

The order is affirmed.

_____
Dondero, J.


We concur:


_____
Humes, P.J.


_____
Banke, J.